UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **MARY L. CARTER,** ) | |
|                 **Plaintiff,** ) | |
|    v. ) | |
| ) | Case No. 06-2051 |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
|                 **Defendant.** ) | |

# ORDER

In August 2005, Administrative Law Judge Barbara Welsh (hereinafter "ALJ) denied social security disability insurance benefits (hereinafter "DIB") to Plaintiff Mary L. Carter. The ALJ based her decision on findings that although Plaintiff suffered from severe impairments, she retained the capability to perform past relevant work as a room cleaner, and she was also capable of performing several unskilled routine and repetitive light jobs that existed in significant numbers in the national economy.

In March 2006, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue[1], the Commissioner of Social Security, seeking judicial review of the final decision by the Commissioner of Social Security Administration (hereinafter "SSA") denying DIB. In August 2006, Plaintiff filed a Motion for Summary Judgment (#8), and in December 2006, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#12). After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#12)**.

---

[1]Michael Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he was substituted for Jo Anne Barnhart as Defendant in this suit.

## I.  Background

### A.  Procedural Background

Plaintiff applied for DIB on November 16, 1998, under the Social Security Act.  (R.102.)  In her application, Plaintiff stated that she became disabled on December 23, 1997, citing back, shoulder, legs, throat, and vision problems.  (R. 102, 119.)  The claim was rejected initially and again on reconsideration by the Regional Commissioner.  (R. 76-79, 81-83.)  Plaintiff then requested a hearing before the ALJ, which took place in May 2000.  (R. 84.)  In November 2000, the ALJ issued a partially favorable decision, claiming that Plaintiff was capable of light work, and entitling Plaintiff to disability commencing on her fifty-fifth birthday on March 11, 1999, when she reached "advanced age" according to 20 C.F.R. § 404.1563.  (R. 15-28.)  However, the ALJ found that Plaintiff was not disabled during the period from December 1997 to March 1999, when she was only *"approaching* advanced age."  20 C.F.R. § 404.1563.  Plaintiff then requested review of the ALJ's decision with the Appeals Council, which was subsequently denied.  (R. 9-12.)

Next, Plaintiff filed suit in this Court.  In June 2000, after the parties filed a Joint Stipulation for Remand, the Court remanded the case.  (R. 667-69.)  The Appeals Council vacated the judgment of the ALJ not to award relief for the period prior to March 1999, with instructions to evaluate the claimant's symptoms and mental impairments.  (R. 673-75.)  The ALJ held another hearing in May 2005, at which Plaintiff and a vocational expert testified.  (R. 876-90.)  The ALJ issued an unfavorable decision in August 2005, denying Plaintiff's claim on the basis of her ability to perform her past work as well as light work available within the national economy.  (R. 566-97.)  Plaintiff then filed for review with the Appeals Council, which was denied, thereby affirming the decision of the ALJ.  (R. 499-501.)  Plaintiff timely commenced this appeal pursuant to 42 U.S.C. § 405(g).

### B.  Plaintiff's Background

The record contains a vast array of evidence shedding light on Plaintiff's impairments.  The description below is limited to the issues Plaintiff raised in this appeal.

On December 23, 1997, the date Plaintiff claims she became disabled, she was fifty-three years old. Plaintiff's elementary school records indicate grades of primarily C or D and a great number of absences (45 of 125 days). (R. 707, 711.) Plaintiff withdrew from school during her eighth grade year, at age sixteen, in March 1960. (R.707.) In November 1956, Plaintiff scored eighty on an I.Q. test, and in November 1959, she scored eighty-one. (R. 712.) Both tests were conducted using the outdated Otis Beta system. (R. 712, 714.)

Thereafter, Plaintiff worked as a bartender from 1974 to 1981, when she left because the business closed; as a room cleaner from 1981 to 1982, when she left because of a back injury; and as a laundry worker from 1991 to 1998, when she was laid off. (R. 176-78.)

In April 1997, an x-ray of Plaintiff's right ankle indicated a "hypertrophic spur at the achilles insertion site." (R. 442.) In July 1997, another x-ray revealed "moderate dorsal calcaneal spurring" at the left ankle. (R. 448.)

In December 1997, Dr. Gaylin Lack diagnosed Plaintiff with a lumbar strain superimposed upon degenerative disc disease with associated sciatica. (R. 326.) In January 1998, Dr. G.J. Tellez diagnosed Plaintiff with obvious dysphonia, a deviated septum, and chronic laryngitis. (R. 827.) A chest x-ray indicated bilateral air trapping. (R.438.) Also in January, speech language pathologist Marcie Miller assessed Plaintiff once more with dysphonia as a result of edema to the vocal folds. (R. 289.)

In April 1998, Dr. Lack noted that Plaintiff was capable of light work but restricted from heavy lifting, and arranged for a functional capacity evaluation ("FCE"). (R. 319.) The FCE, conducted by physical therapist Carla Thomas, found that Plaintiff showed a high tolerance for sitting and standing, performed at a sedentary physical demand level, and could lift up to a maximum of sixteen pounds. (R. 458.) Thomas held that Plaintiff should not be required to use high level balance, and should rarely squat, crawl, crouch, or kneel. (R. 458-59)

In May 1998, Dr. Lack reviewed Plaintiff's FCE and notified Plaintiff that she could return to light work duty with lifting restrictions of no greater than twenty pounds. (R. 317.) Later in May, Thomas conducted a mini FCE to measure Plaintiff's progress, and found that she could "lift a few more pounds," and had improved in overall endurance. (R. 475-76.) Otherwise, the mini FCE results were the same as the initial FCE. (R. 475-76.)

In June 1998, Dr. Lack noted that Plaintiff had undergone a recent evaluation with Dr. Fletcher, who noted that he agreed with the FCE. (R. 316) Later in June, Dr. Lack noted that Dr. Fletcher had conducted his own FCE, in which he indicated that Plaintiff was at maximum medical improvement and could return to work (perhaps having to find other work). (R. 315.) Dr. Lack also concurred that Plaintiff had reached maximum improvement, and concluded that she could return to work with a lifting restriction of no greater than fifteen pounds. (R. 315.)

In July 1998, Dr. Lack released Plaintiff to return to her medium-level work, with *no* specific restrictions issued. (R. 314.) In October 1998, Dr. Derek Archer conducted an x-ray that indicated an enlarged cardiac silhouette and patchy perihilar interstitial increased marking. (R. 435.)

In February 1999, Plaintiff took a WAIS-III I.Q. test in which she demonstrated a verbal I.Q. of 67, a performance I.Q. of 68, and a full scale I.Q. of 65. (R. 308.) Dr. Jerry L. Boyd, administered the test and he later noted that WAIS-III is a far more accurate I.Q. indicator than the Otis Beta tests which Plaintiff had previously taken. (R. 714.)

In April 1999, another x-ray indicated that Plaintiff's lung fields were clear but that there existed mild air trapping, which had been present in the January 1998 x-ray. (R. 438.)

In March 2000, Dr. Lack conducted a residual functional capacity (hereinafter "RFC") report finding that Plaintiff had thoracic pain, lumbar pain, and lumber degenerative disc disease. (R. 408.) He provided MRI results and other technical findings to support these diagnoses.

4

(R. 408.) Dr. Lack then predicted that Plaintiff, even at the light exertional level, would need an extra hour of breaks for every eight-hour work-day, and would miss at least three days a month. (R. 409.) Further, Dr. Lack noted that Plaintiff should avoid moderate exposure to extreme temperatures, fumes, odors, and other hazards, and concentrated exposure to wetness. (R. 409.)

In May 2005, at the hearing before the ALJ, vocational expert Bonnie Gladden (hereinafter "VE") testified to several relevant issues. The VE stated that Plaintiff would be capable of performing her past relevant work as a room cleaner, which was considered "light," but not as a laundry worker, which was considered "medium." (R. 882.) Furthermore, the VE found that Plaintiff was capable of performing numerous jobs that existed in substantial numbers within the national economy, such as receptionist or information clerk. (R. 883.) Under examination by Plaintiff's attorney, the VE testified that employment would be precluded if Plaintiff were required to take *either* breaks in excess of one hour per day or more than three absences per month. (R. 885-86.)

### C. The ALJ's Findings and Decision

In determining whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a)-(f). The Commissioner must determine in sequence: (1) whether the claimant is currently employed (or was during the relevant period); (2) whether she had a severe impairment; (3) whether the impairment met or equaled one listed by the Commissioner; (4) whether the claimant could have performed her past work; and (5) whether the claimant was capable of performing any work in the national economy. *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). Once the claimant has satisfied the first two steps, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment, but cannot perform her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

The ALJ made the following findings that bore on her decision: (1) Plaintiff had not engaged in any "substantial gainful activity" between December 23, 1997, and March 10, 1999; (2) Plaintiff's impairments were "severe" during the period at dispute; (3) Plaintiff's impairments did not meet a listed impairment; (4) Plaintiff's testimony regarding her degree of limitations is not credible; (5) during the disputed period, Plaintiff retained the RFC to perform "routine and repetitive unskilled light work"; (6) during the disputed period, Plaintiff was capable of performing her past relevant work as a room cleaner; (7) Plaintiff's RFC did not preclude a significant number of jobs within the national economy; and (8) on the basis of these findings, Plaintiff was not under disability during the disputed period. (R. 595.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case de novo or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Social Security Commissioner as to any fact are conclusive where that finding is supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether Plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz*, 55 F.3d at 306. The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

In order for this Court to find that substantial evidence supports the ALJ's ruling, the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). This requires the ALJ to sufficiently articulate her evaluation of the evidence so that upon review this Court may assure itself that the ALJ considered all important evidence and also so that the Court can properly follow the ALJ's reasoning. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). The ALJ is not, however, required to conduct a written evaluation of every piece of evidence. *Id.*

### III.  Analysis

Plaintiff posits five points of error by the ALJ that warrant reversal:  (1) the ALJ erred in finding that Plaintiff's mental retardation was not equivalent to 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C); (2) that the ALJ failed to identify Plaintiff's severe impairments; (3) that the ALJ failed to consider the combined effect of Plaintiff's impairments; (4) the ALJ's decision is not supported by substantial evidence; and (5) Dr. Lack's opinion should carry controlling weight. This Court will examine the final three issues in conjunction with the ALJ's determination of Plaintiff's RFC.

#### A.  ALJ's Determination Regarding Plaintiff's Mental Impairments
##### 1.  Medical Equivalency to Listing 12.05(C)

Plaintiff's argument for step three is not that she meets Listing 12.05(C), but rather that she is afflicted with its functional equivalent.  Plaintiff contends that (1) the requirement of age should not be considered in this equivalency evaluation; (2) meeting the severity requirements of Listing 12.05(C) in itself established equivalency; and (3) the severity requirements of Paragraph C in fact were met, which, in itself, denotes equivalence to Listing 12.05(C).

In order to satisfy the requirements of Listing 12.05(C), both the diagnostic description in the introductory paragraph of Listing 12.05 and one of the severity criteria must be satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A).  This may be distilled into the following four-part test:  (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested before age 22; (3) a valid verbal, performance, or full scale I.Q. of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Adkins v. Astrue,* No. 06-1476, 2007 WL 1100840, *4 (7th Cir. 2007); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05; *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999).

The definition of "medical equivalency" under 20 C.F.R. § 404.1526 requires that Plaintiff show evidence to satisfy all of the criteria for the most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Maggard,* 167 F.3d at 380.  In addition,

findings of medical equivalency are to be made on medical evidence alone. 20 C.F.R. § 404.1526(b). This excludes the vocational factors of age, education, and work experience. SSR 96-5p.

Plaintiff has provided ample evidence in favor of the first two elements of the above mentioned four-part test, which the ALJ has not disputed. Only elements three and four are at issue. After carefully reviewing the record, the Court concludes that substantial evidence supports the ALJ's determination regarding the third and fourth elements.

In the instant case, Plaintiff first argues that the severity requirements of Paragraph C satisfy Listing 12.05(C) in themselves. On this basis, she contends that the evidence regarding her ability to perform household chores, work as a laundry worker, and write were irrelevant. This is incorrect. The severity requirements of A, B, C, and D are merely elements in the listing, they are not the *sine qua non* of mental disorder. Therefore, this evidence was essential for the ALJ to determine whether Plaintiff met or equaled the requirements of significant deficits in adaptive functioning or significantly subaverage intellectual functioning.

Plaintiff next contends that the ALJ should not have considered age in making a 12.05(C) determination. Plaintiff is correct that the ALJ should not consider the *vocational* factor of age in making medical equivalency determinations. However, the ALJ did not use age as a vocational factor. Instead, she considered age only to the extent she required Plaintiff to prove that her deficits in adaptive functioning manifested before age twenty-two. The age requirement is intrinsic to this element. Therefore, the ALJ did not err by examining Plaintiff's age as it pertained to her deficits in adaptive functioning.

Although the record offers limited evidence on this issue, it is sufficient to support the ALJ's conclusion that Plaintiff's deficits did not manifest prior to age twenty-two. The ALJ noted that while Plaintiff's mediocre-to-poor performance in school may have indicated a low I.Q., it was more likely a product of Plaintiff's absences. Because there are few indicators as to Plaintiff's I.Q. prior to age twenty-two, the ALJ properly considered her later activities,

including her work as a bartender and her ability to write (albeit with some difficulty), and concluded that those activities did not necessarily indicate a low I.Q.

On the other hand, in 1999, Plaintiff took an I.Q. test and received a score of 65. The ALJ did not discredit this I.Q. test score. (R. 589.) Generally, a person's I.Q. is assumed to be constant over time in the absence of any evidence to the contrary. *Maresh v. Barnhart*, 431 F.3d 1073, 1075 (8th Cir. 2005). However, Plaintiff's work experience, her early I.Q. test scores of eighty and eighty-one, and numerous absences from school constitute "evidence to the contrary" in this case, and the ALJ concluded that the recent I.Q. test did not represent Plaintiff's I.Q. prior to age twenty-two. Having reviewed the ALJ's consideration of the evidence regarding I.Q., the Court concludes the ALJ did not err by finding that Plaintiff did not suffer from a significant deficit that manifested prior to the age of twenty-two.

Plaintiff also asserts that the ALJ should have examined whether alcohol can result in mental impairment. However, Plaintiff must demonstrate that the deficits in adaptive functioning manifested *before* age twenty-two. Here, Plaintiff claimed to have used alcohol heavily during her thirties. Thus, her alcohol use is irrelevant to this determination. In fact, this argument actually undermines Plaintiff's premise by suggesting that her mental functioning declined after she began drinking. Thus, the ALJ did not err by failing to consider the effect of alcohol on Plaintiff's deficits prior to age twenty-two.

In general, the requirements for Listing 12.05(C) are such that it would be very difficult to make a claim for equivalency. *Shontos v. Barnhart*, 328 F.3d 418, 424 n.7 (8th Cir. 2003). This difficulty applies particularly to the requirement of deficits in adaptive functioning prior to age twenty-two. Rather than a condition which could be equaled in severity, it is a very specific requirement that is essential to Listing 12.05.

The ALJ relied on the same evidence discussed above to conclude that Plaintiff did not demonstrate significantly subaverage intellectual functioning. Specifically, the ALJ considered Plaintiff's functioning over the course of her adult life when analyzing whether Plaintiff

manifested deficits before age twenty-two. (R. 589.) Based on this evidence, the ALJ did not err by determining that Plaintiff did not suffer from significantly subaverage intellectual function.

Of the remaining two elements (the severity requirements of Section C), Plaintiff has provided evidence to establish their presence. Nevertheless, this does not ameliorate Plaintiff's failure to meet or equal the elements of significantly subaverage intellectual functioning or deficits that manifested prior to age twenty-two. Therefore, the ALJ did not err by determining that Plaintiff did not meet or equal the requirements of Listing 12.05(C).

### 2. ALJ's Listing 12.02 Determination

Although Plaintiff has not explicitly argued that she satisfied Listing 12.02, organic brain disorders, this Court will consider the ALJ's discussion of the matter.

In order to satisfy Listing 12.02, Plaintiff must meet first the diagnostic description of the introductory paragraph. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. This requires demonstration of the "presence of a specific organic factor judged etiologically related to the abnormal mental state and loss of previously acquired functional capabilities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Upon this showing, Plaintiff may then either show that she satisfies (1) A and B criteria, or (2) A and C criteria. 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.00. Section 12.02(A)(7), which is the only possible subsection A medical finding in this instance, requires a "[l]oss of measured intellectual ability of at least 15 I.Q. points." 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.02(A)(7).

In the instant case, Plaintiff satisfies the Section 12.02(A)(7) criteria. Plaintiff's 1959 I.Q. test score indicated an I.Q. of 81, and her 1999 I.Q. test score indited an I.Q. of 65. Given that the ALJ did not expressly conclude that Plaintiff's 1959 I.Q. test was invalid, and despite the fact that the test scores were derived from different tests, these tests nonetheless demonstrate a decline in I.Q. of 16 points. Thus, they meet the requirement of Section 12.02(A)(7).

Nevertheless, Plaintiff's condition does not meet the diagnostic description of the introductory paragraph of Listing 12.02 because she has not demonstrated "the presence of a specific organic factor judged to be etiologically related to the abnormal mental state." The record includes reports from two agency psychologists that support this conclusion. Accordingly, the ALJ did not err by concluding that Plaintiff failed to meet the requirements of Listing 12.02.

### B.  ALJ's Identification of Severe Impairments

Plaintiff next argues that the ALJ erred at step two of the five-step analysis by failing to determine the severity of every impairment. Plaintiff points specifically to the ALJ's failure to mention the arthritis of her feet and ankles and chronic obstructive pulmonary disease (COPD). Plaintiff also contends that this omission affects the analysis of Listing 12.05(C) equivalence discussed above.

Step two requires Plaintiff to show either a severe medical impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1509(a)(4)(ii). In essence, step two is a threshold question. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see Bradley v. Barnhart*, 175 F. App'x 87, 90 (7th Cir. 2006) (holding that after the ALJ found evidence of *a* severe impairment it was unnecessary for the ALJ to make a severity finding as to each impairment).

In the instant case, the ALJ did not err at step two. The ALJ found that Plaintiff's impairments were severe, either individually or in combination. Given that step two is a threshold requirement, no further analysis was necessary at this point. Furthermore, there is no reason for Plaintiff to contest this issue when its result was favorable to her.

The ALJ did not err by failing to consider Plaintiff's arthritis or COPD at step three either. As detailed above, Plaintiff's Listing 12.05(C) equivalency argument failed at the first two elements, namely, the showing of significantly substandard intellectual functioning and deficits in adaptive reasoning that manifested before age twenty-two. Plaintiff's arthritis and COPD have no bearing on either of these elements.

### C.  ALJ's Consideration of Combined Effect of Plaintiff's Impairments

Plaintiff next contends that the ALJ erred when she failed to consider the combined effect of Plaintiff's impairments.  Plaintiff has not stated which step this error affected.

Step two requires Plaintiff to show either a severe medical impairment or a combination of impairments that is severe.  20 C.F.R. § 404.1509(a)(4)(ii).  Here, the ALJ found one or both of the above.  Thus, Plaintiff suffered no injury at step two and the ALJ did not err in any regard.

Upon finding one or more of Plaintiff's impairments to be severe, the ALJ must consider their aggregate effect throughout the process.  *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).  A failure to do so would also bear on a determination of Plaintiff's RFC, and the Court will consider that issue in the next section.

### D.  ALJ's Residual Functional Capacity Analysis

Plaintiff next argues that ALJ incorrectly determined the Plaintiff's RFC.  Specifically, Plaintiff contends that (1) the ALJ should have assigned controlling weight to the opinion of Dr. Lack; and (2) the ALJ's RFC determination was not supported by substantial evidence.

In making an RFC determination, the ALJ is to examine "all the relevant evidence in your case record."  20 C.F.R. § 404.1545.  The ALJ should consider physical, mental, and other impairments.  *Id*.

#### 1.  The ALJ's Consideration of Medical Opinions

Plaintiff argues that the ALJ should have assigned controlling weight to Dr Lack's March 2000 RFC report in analyzing steps four and five.  At issue are Dr. Lack's statements that, because of pain and fatigue, Plaintiff (1) will need breaks that total an hour or more in the course of an eight-hour day; and (2) will be absent from work more than three times per month. (R. 409.)  If accepted, these statements, in conjunction with the VE's testimony that such

conditions would render it impossible for Plaintiff to work, provide substantial evidence that contradicts the ALJ's step four and five determinations.

In general, controlling weight will be assigned to a medical opinion when: (1) the opinion comes from a treating source; (2) the opinion is a medical opinion; (3) the opinion is "well-supported"; (4) and the opinion is "not inconsistent" with other "substantial" evidence on record. SSR 96-2p. Some opinions within a single document may be controlling while others may not. *Id*.

In the instant case, Dr. Lack is a treating source, and neither the ALJ nor Plaintiff questioned whether the statements at issue constituted medical opinions. The crux of the dispute is whether the ALJ was correct to reason that Dr. Lack's statements regarding missed work were not "well supported" and "inconsistent with other substantial evidence."

   **a. Whether Dr. Lack's Opinions Regarding Missed Work Were "Well Supported"**

In order for an opinion to be well supported, it must be derived from "medically acceptable" clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527. "Well supported" differs from "fully supported" and is a fact-based "judgment that adjudicators must make." SSR 96-2p. *See Burton v. Barnhart*, 203 F. App'x 737, 741-42 (7th Cir. 2006) (holding that a doctor's opinion regarding how many days of work the plaintiff would miss because of mental impairment was not well supported because the opinion failed to provide clinical or laboratory support). The case record may provide further support to "flesh out" an opinion. *See Barnett v. Barnhart*, 381 F.3d 644, 669 (7th Cir. 2007).

In the instant case, the ALJ concluded that Dr. Lack's RFC was not well supported. (R. 582.) In reaching the conclusion, the ALJ relied on what she characterized as mild and unremarkable MRI and examination findings, and said they do not provide a basis for the degree of absenteeism opined by Dr. Lack. (R. 582.)

13

In actuality, Dr. Lack lists Plaintiff's back impairments and provides objective findings for his determinations within the RFC report. Although the causal chain linking the back impairments to the statements regarding missed work requires further support, the record contains the requisite support. The record includes facts that Plaintiff returned to work but was subsequently unable to retain employment (R. 313), that Dr. Lack limited Plaintiff's lifting to fifteen pounds (rather than the twenty required for light work) (R. 315), and that the May 1998 FCE limited Plaintiff to sedentary work. This evidence supports Dr. Lack's opinion that Plaintiff would need supplementary breaks and absences to cope with consistent light work.

Furthermore, the record also supports the existence of the pain and fatigue which form the basis for Dr. Lack's statements regarding missed work. (R. 409.) Therefore, the ALJ erred by concluding that Dr. Lack's opinions regarding missed work swere not "well supported."

### b.  Whether Dr. Lack's Opinions Regarding Missed Work Were Inconsistent

Even when a medical opinion is found to be well supported, it must still be "not inconsistent" with the other evidence on record before it is given controlling weight. SSR 96-2p at 2; *see* 20 C.F.R. § 404.1527(d)(2). The ALJ must conduct a thorough examination of all the medical evidence on record to determine whether there is any inconsistent medical evidence. *See Barnett,* 381 F.3d at 669 (remanding where the explanation ignored or misconstrued significant parts of the medical record). However, an ALJ may discount a medical opinion that is internally inconsistent as long as he "minimally articulate[s] his reasons for . . . rejecting [it]." *Clifford,* 227 F.3d at 871.

If an ALJ has not correctly indicated the discrepancy or her reasons for rejecting an opinion, the error would be harmless if the record contains evidence to support her finding. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding that no remand is required unless the ALJ would be expected to find differently). In *Simpson v. Barnhart*, the Seventh Circuit court held that a remand was unnecessary where the ALJ failed to provide his reasoning for deeming an opinion inconsistent but the record supported such a conclusion. *Simpson v. Barnhart,* 91 F.App'x 503, 506-07 (7th Cir. 2004). The medical opinion at issue in that case had

14

stated that the plaintiff would miss three days of work per month but the record was rife with conflicting medical opinions that indicated he could return to work with only minor restrictions. *Id.*

In the instant case, the ALJ concluded that Dr. Lack's missed work opinions were inconsistent with other substantial evidence, citing Dr. Lack's July 1998 report that Plaintiff was free to return to work with "no specific restrictions . . . issued" (R. 314). In addition, the ALJ cited the March 2000 RFC report stating that, since December 1997, Plaintiff's impairments had required no exposure to extreme cold or heat, or hazards, or concentrated exposure to wetness (R. 409). The Court observes that Dr. Lack's statements regard missed work opinions are not technically "restrictions," but are more akin to predictions. Thus, the July 1998 report that only stated Plaintiff was subject to "no specific restrictions" was not, standing alone, inconsistent with his opinions regarding missed work. However, the record contains other evidence that is inconsistent with the opinions at issue, including the July 1998 report, Dr. Lack's June 1998 report indicating that Dr. Fletcher believed Plaintiff should return to work (R. 315), and the fact that Plaintiff returned to part-time medium level work from July 1998 to October 1998. This evidence, taken together, indicates that Plaintiff would not be prone to chronic absenteeism. Thus, despite the ALJ's failure to correctly articulate the inconsistency pertaining to Dr. Lack's expectations regarding missed work, the record supports her conclusion.

In summary, Dr. Lack's opinions regarding missed work were "well supported" by the medical evidence on record. Nevertheless, because they were also *inconsistent* with substantial evidence in the record, the ALJ did not err by deciding not to afford Dr. Lack's missed work opinions controlling weight.

### 2. The ALJ's RFC Evaluation

Plaintiff next contends that the ALJ's decision not to accept Dr. Lack's RFC assessment was not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to consider the April 1998 FCE in conjunction with Dr. Lack's opinion. Based on this argument, as

well as Plaintiff's concern about whether the ALJ considered the combined effect of her impairments, this Court will examine the ALJ's RFC determination as a whole.

The ALJ must base her determination of claimant's RFC on the relevant medical evidence. SSR 96-2p. An ALJ must explain and support how she determined a claimant's limitations in formulating an RFC. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Although the ALJ is not required to list and evaluate the merits of every single piece of evidence before her, *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995), the ALJ cannot selectively overlook the evidence that conflicts with her ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Once a medical opinion is determined to be noncontrolling, it is equivalent to any other piece of evidence the ALJ must weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

"Light work" requires lifting no more than twenty pounds, with frequent lifting of up to ten pounds. 20 C.F.R. § 404.1567. Also, light work may include jobs that require "standing or walking, off and on, for a total of [six] hours per day." *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005). "Unskilled work" includes jobs that require little judgment, skills that can be learned quickly, and no particular strength requirements. 20 C.F.R. § 404.1568. Furthermore, an adjudicator must not assume that medical sources are aware of the definitions of such terms and thus is not obligated to directly adopt any such assertions. SSR 96-5p at 5.

Here, the ALJ mentioned both Plaintiff's physical and mental impairments and concluded that Plaintiff was capable of routine and repetitive unskilled light work. (R. 591-93.) Given that Dr. Lack's opinions regarding missed work are not to be accorded controlling weight, those statements are just one indicator in a mass of contradictory evidence. Furthermore, because the VE's testimony regarding missed work is predicated on Dr. Lack's statements regarding missed work, we cannot say that the ALJ erred by discounting that testimony.

In arguing that the ALJ's RFC assessment was incorrect, Plaintiff relies on the April 1998 FCE (by the physical therapist, Ms. Thomas) that listed Plaintiff's impairments, in

16

particular that Plaintiff was capable of only sedentary work. The Court first notes that Ms. Thomas' findings are not controlling because she is not a treating physician. They must therefore be weighed as any other evidence would, including her conclusion that Plaintiff is capable of only sedentary work. *See* SSR 96-5p. Second, Ms. Thomas' opinions must be considered in conjunction with the May 1998 mini-FCE she conducted, in which she concluded Plaintiff was able to lift a "few more pounds" than the sixteen she had originally noted. Given these two considerations, the Court concludes that the ALJ adequately considered Thomas' findings in her RFC analysis. *See* (R. 591.)

Next, Plaintiff contends that the ALJ should have considered Dr. Lack's June 1998 note, in which he indicates that Dr. Fletcher agreed with Thomas' FCE, in weighing Dr. Lack's opinion. Plaintiff fails to recognize that although Dr. Fletcher agreed with the FCE, he recommended that Plaintiff return to her medium duty work immediately, a fact that cuts heavily against Plaintiff's argument that the ALJ failed to give adequate weight to Dr. Lack's opinion.

As further evidence that the ALJ's RFC determination was incorrect, Plaintiff also points to Dr. Lack's June 1998 note which stated that Plaintiff was limited to lifting no more than fifteen pounds. This note is inconsistent with Dr. Lack's May 1998 note that she could lift up to twenty pounds. Therefore, the ALJ properly did not assign it controlling weight.

Plaintiff also contends that the ALJ must take into account the x-ray evidence showing a hypertrophic spur on Plaintiff's achilles. (R. 442, 448.) Neither Plaintiff nor the medical evidence explains how the spurs would affect her ability to stand at the levels required for light work. The Court notes that the FCE included tests specifically aimed at diagnosing problems with standing. Thus, by considering the FCE, the ALJ in fact considered Plaintiff's problems with walking and standing. Even if the ALJ had not considered these problems at this point, the VE specifically noted that her conclusions at the hearing were premised on Plaintiff's discomfort with prolonged standing or walking (R. 882), and any failure by the ALJ was ameliorated at this

point. Moreover, the definition of light work does not require six to eight hours of standing – this is merely one possible form of light work. Thus, even had the ALJ failed to consider this evidence, its consideration would have no bearing on the ultimate RFC determination.

For these reasons, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff was capable of light work. In her reasoning, the ALJ referred to Dr. Lack's May 1998 note that stated Plaintiff could lift up to twenty pounds and to the fact that Plaintiff returned to her medium work job for some time. (R. 319.) The ALJ also explained why Plaintiff's dysphonia and COPD had no bearing on the light work analysis. (R. 591.) Based on this evidence, the ALJ's did not err by reaching her conclusion that Plaintiff was capable of light work.

In addition, substantial evidence supports the ALJ's conclusion that Plaintiff was capable of unskilled routine and repetitive work. The ALJ examined Plaintiff's educational and work experience in reaching this conclusion, and specifically referred to Plaintiff's experience as bartender and laundry worker. (R. 592.) This was sufficient to support her conclusion that Plaintiff was able to perform unskilled routine and repetitive work.

The Court notes that "[no] principle of administrative law or common requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher*, 869 F.2d at 1057 (7th Cir. 1989). Ultimately, whatever the imperfections of the ALJ's opinion, she sufficiently articulated her reasoning and reached a result that is supported by substantial evidence.

### IV.  Summary

For the reasons set forth above, this Court **GRANTS** Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#12)**.

ENTER this 2nd day of August, 2007.

                s/ DAVID G. BERNTHAL
                U.S. MAGISTRATE JUDGE